1   SEYFARTH SHAW LLP
    Jon D. Meer (SBN 144389)
2   jmeer@seyfarth.com
    Leo Q. Li (SBN 293539)
3   lli@seyfarth.com
    Romtin Parvaresh (SBN 301554)
4   rparvaresh@seyfarth.com
    2029 Century Park East, Suite 3500
5   Los Angeles, California 90067-3021
    Telephone:  (310) 277-7200
6   Facsimile: (310) 201-5219

7   Attorneys for Defendant
    CARTER'S RETAIL, INC.

8

9

10                  UNITED STATES DISTRICT COURT

11                SOUTHERN DISTRICT OF CALIFORNIA

12

13  SUSANA LUNA, on behalf of others          **CLASS ACTION**
    similarly situated,
14                                            Case No. _____'25CV1323 H    KSC_____
                       Plaintiffs,
15                                            **DEFENDANT CARTER'S RETAIL,**
          v.                                  **INC.'S NOTICE OF REMOVAL OF**
16                                            **ACTION TO UNITED STATES**
    CARTER'S RETAIL INC. and DOES 1           **DISTRICT COURT**
17  through 50, inclusive,
                                              [San Diego Superior Court Case No.
18                     Defendants.            25CU020823C]

19                                            Complaint Filed: April 22, 2025
                                              Trial Date: None Set
20

21

22

23

24

25

26

27

28

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

# **TABLE OF CONTENTS**

**Page**

I.      BACKGROUND ................................................................................................1

II.     TIMELINESS OF REMOVAL .......................................................................2

III.    REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT ...........................3

        A.     This Action Includes Approximately 4,983 Proposed Class Members. .........3

        B.     Plaintiff And Defendant Are Minimally Diverse.............................................4

               1.     Plaintiff Is A Citizen Of California.......................................................4

               2.     Defendant Is A Citizen Of Delaware And Georgia, Not California.....5

               3.     The Citizenship Of Doe Defendants Should Be Disregarded. .............6

        C.     The Amount In Controversy For Three Of Plaintiff's 11 Claims Exceeds $18
               Million, Which Is Well Above The $5 Million Statutory Threshold Under
               CAFA ...................................................................................................7

               1.     Meal And Rest Period Claims.............................................................12

                      a.     Meal Period Calculations.........................................................13

                      b.     Rest Period Calculations..........................................................15

               2.     Waiting Time Penalties ......................................................................16

               3.     Aggregate Amount In Controversy Before Attorneys' Fees ..............18

               4.     Attorneys' Fees ..................................................................................18

               5.     Summary of Total Amount In Controversy .......................................21

IV.     VENUE..........................................................................................................22

V.      NOTICE TO STATE COURT AND TO PLAINTIFF ...........................................22

VI.     PRAYER FOR REMOVAL.............................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrego v. Dow Chemical Co.*,
443 F.3d 676 (9th Cir. 2006) .................................................................7, 8

*Agredano v. Sw. Water Co.*,
2017 WL 2985395 (C.D. Cal. May 30, 2017)....................................14

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019) ...................................................9, 15, 19

*Armstrong v. Church of Scientology Int'l*,
243 F.3d 546 (9th Cir. 2000) .................................................................5

*Arreola v. The Finish Line*,
2014 WL 6982571 (N.D. Cal. Dec. 9, 2014).....................................10

*Brady v. Mercedes-Benz USA, Inc.*,
243 F. Supp. 2d 1004 (N.D. Cal. 2002)..............................................18

*Bryant v. NCR Corp.*,
284 F. Supp. 3d 1147 (S.D. Cal. 2018)...............................................14

*Byrd v. Masonite Corp.*,
2016 WL 2593912 (C.D. Cal. May 5, 2016) ......................................17

*Campbell v. Vitran Exp., Inc.*,
471 F. App'x 646 (9th Cir. 2012) .......................................................20

*Chavez v. JPMorgan Chase & Co.*,
888 F.3d 413 (9th Cir. 2018) ..............................................................19

*Cicero v. DirecTV, Inc.*,
2010 WL 2991486 (C.D. Cal. July 27, 2010).....................................20

*City of Clarksdale v. BellSouth Telecommunications, Inc.*,
428 F.3d 206 (5th Cir. 2005) ...............................................................2

*Coleman v. Estes Express Lines, Inc.*,
730 F. Supp. 2d 1141 (C.D. Cal. 2010), aff'd sub nom. 631 F.3d 1010
(9th Cir. 2011)..............................................................11, 15

ii

*Cortez v. United Nat. Foods, Inc.*,
    2019 WL 955001 (N.D. Cal. Feb. 27, 2019) ...................................................20

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    574 U.S. 81 (2014) ...............................................................................3, 9

*In re Digimarc Corp. Derivative Litig.*,
    549 F.3d 1223 (9th Cir. 2008) ...................................................................4

*Franke v. Anderson Merchandisers LLC*,
    2017 WL 3224656 (C.D. Cal. July 28, 2017) .................................................11

*Fristoe v. Reynolds Metals Co.*,
    615 F.2d 1209 (9th Cir. 1980) ...................................................................7

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
    899 F.3d 785 (9th Cir. 2018) ...................................................................19

*Galt G/S v. JSS Scandinavia*,
    142 F.3d 1150 (9th Cir. 1998) ...................................................................18

*Guglielmino v. McKee Foods Corp.*,
    506 F.3d 696 (9th Cir. 2007) ...............................................................8, 10

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ...................................................................................5

*Industrial Tectonics, Inc. v. Aero Alloy*,
    912 F.2d 1090 (9th Cir. 1990) ...................................................................6

*Jones v. Tween Brands, Inc.*,
    2014 WL 1607636 (C.D. Cal. Apr. 22, 2014) .................................................11

*Kantor v. Wellesley Galleries, Inc.*,
    704 F.2d 1088 (9th Cir. 1983) ...................................................................4

*Kastler v. Oh My Green, Inc.*,
    2019 WL 5536198 (N.D. Cal. Oct. 25, 2019) .................................................19

*Korn v. Polo Ralph Lauren Corp.*,
    536 F. Supp. 2d 1199 (E.D. Cal. 2008) .......................................................9

*Longmire v. HMS Host USA, Inc.*,
    2012 WL 5928485 (S.D. Cal. Nov. 26, 2012) .................................................18

iii

*Lopez v. Aerotek, Inc.*,
    2015 WL 2342558 (C.D. Cal. May 14, 2015) ....................................................15

*Lucas v. Michael Kors (USA), Inc.*,
    2018 WL 2146403 (C.D. Cal. May 9, 2018) ......................................................19

*Lyon v. W.W. Grainger, Inc.*,
    2010 WL 1753194 (N.D. Cal. Apr. 29, 2010) ...................................................13

*Mejia v. DHL Express (USA), Inc.*,
    2015 WL 2452755 (C.D. Cal. May 21, 2015) ....................................................14

*Muniz v. Pilot Travel Ctrs. LLC*,
    2007 WL 1302504 (E.D. Cal. May 1, 2007) ..........................................9, 10, 19

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999) ...........................................................................................3

*Murphy v. Kenneth Cole Prods., Inc.*,
    40 Cal. 4th 1094 (2007) ....................................................................................13

*Perez v. Rose Hills Co.*,
    131 F.4th 804 (9th Cir. 2025) .............................................................................9

*Pineda v. Bank of Am., N.A.*,
    50 Cal. 4th 1389 (2010) ....................................................................................17

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ..........................................................................19

*In re Quintas Secs. Litig.*,
    148 F. Supp. 2d 967 (N.D. Cal. 2001) ...............................................................20

*Ramos v. MOOG Inc.*,
    2020 WL 969023 (C.D. Cal. Feb. 27, 2020) .....................................................19

*Ramos v. Schenker, Inc.*,
    2018 WL 5779978 (C.D. Cal. Nov. 1, 2018) .....................................................20

*Ritenour v. Carrington Mortg. Servs. LLC*,
    228 F. Supp. 3d. 1025 (C.D. Cal. 2017) ............................................................11

*Rodriguez v. AT&T Mobility Servs. LLC*,
    728 F.3d 975 (9th Cir. 2013) ..........................................................................8, 9

iv

*Sanchez v. Monumental Life Ins. Co.*,
 102 F.3d 398 (9th Cir. 1996) ...................................................................8

*Schiller v. David's Bridal, Inc.*,
 2010 WL 2793650 (E.D. Cal. July 14, 2010)........................................8

*Soliman v. Philip Morris, Inc.*,
 311 F. 3d 966 (9th Cir. 2002) ...................................................................6

*Soratorio v. Tesoro Ref. and Mktg. Co., LLC*,
 2017 WL 1520416 (C.D. Cal. Apr. 26, 2017) ....................................10

*State Farm Mut. Auto Ins. Co. v. Dyer*,
 19 F.3d 514 (10th Cir. 1994) ...................................................................4

*Tajonar v. Echosphere*,
 LLC, 2015 WL 4064642 (S.D. Cal. July 2, 2015) ............................17

*Torrez v. Freedom Mortg., Corp.*,
 2017 WL 2713400 (C.D. Cal. June 22, 2017)....................................11

*Valdez v. Allstate Ins. Co.*,
 372 F.3d 1115 (9th Cir. 2004) ...................................................................9

*Wheatley v. MasterBrand Cabinets*,
 2019 WL 688209 (C.D. Cal. Feb. 19, 2019) ...............................10, 14

*Wren v. RGIS Inventory Specialists*,
 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)......................................20

*Zavala v. Deutsche Bank Trust Co. Americas*,
 2013 WL 3474760 (N.D. Cal. July 10, 2013) ....................................4

**Statutes**

28 U.S.C. § 84(d) ...............................................................................22

28 U.S.C. § 1332(c)(1)....................................................................5, 6

28 U.S.C. § 1332(d) ......................................................................7, 21

28 U.S.C. § 1332(d)(2)...................................................................7, 21

28 U.S.C. § 1332(d)(2)(A) ...............................................................4

v

28 U.S.C. § 1332(d)(5)(B) ...................................................................................3

28 U.S.C. § 1332(d)(6)..........................................................................................7

28 U.S.C. § 1367(a) .............................................................................................22

28 U.S.C. § 1441(a) ...................................................................................3, 21, 22

28 U.S.C. § 1441(b) ...............................................................................................6

28 U.S.C. § 1446(a) .............................................................................................22

28 U.S.C. § 1446(b) ...............................................................................................2

28 U.S.C. § 1446(b)(1)...........................................................................................2

28 U.S.C. § 1446(d) .............................................................................................22

Cal. Bus. & Prof. Code § 17200 ..........................................................................13

Cal. Bus. & Prof. Code § 17208 ..........................................................................13

Cal. Code Civ. Proc. § 12 ......................................................................................2

Cal. Code Civ. Proc. § 415.10 ...............................................................................2

Cal. Lab. Code § 203 .....................................................................................16, 17

Cal. Lab. Code § 203(a) .......................................................................................16

Cal. Lab. Code § 226.7 .........................................................................................13

Cal. Lab. Code § 512 ...........................................................................................12

**Other Authorities**

Cal. R. Ct. 1.10(b) .................................................................................................2

Fed. R. Civ. P. 6(a)(1)(c) .......................................................................................2

IWC Wage Order § 12(A).....................................................................................12

Pub. L. 112–63, Dec. 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28
    U.S.C. § 1446(c)(2) (emphasis added)).............................................................8

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

317935233v.2

TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF CALIFORNIA AND TO PLAINTIFF SUSANA LUNA AND HER
ATTORNEYS OF RECORD:

   **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. sections 1332, 1441, and
1446, Defendant Carter's Retail, Inc. ("Defendant") hereby removes the above-captioned
action from the Superior Court of the State of California for the County of San Diego
("San Diego Superior Court") to the United States District Court for the Southern District
of California. This Court has original jurisdiction over this action pursuant to the Class
Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. section 1332(d)(2), and removal
jurisdiction under 28 U.S.C. sections 1332(c), 1332(d)(2), 1441(a), 1446 and 1453.
Removal is proper for the reasons set forth below.

## I.    BACKGROUND

   1.    On April 22, 2025, Plaintiff Susana Luna ("Plaintiff") filed a class action
complaint in San Diego Superior Court, titled "*SUSANA LUNA, on behalf of other
similarly situated, Plaintiffs, vs. CARTER'S RETAIL INC. and DOES 1 through 50,
inclusive, Defendants*" and designated as case number 25CU020823C ("Complaint" or
"Compl."). The Complaint asserts 11 causes of action for: (1) "Failure to Pay All Wages
Owed;" (2) "Failure to Pay All Overtime Wages;" (3) "Meal Period Violations;"
(4) "Rest Period Violations;" (5) "Paid Sick Leave Violations;" (6) "Unpaid Vacation
Wages;" (7) "Untimely Payment of Wages;" (8) "Wage Statement Violations;"
(9) "Waiting Time Penalties;" (10) "Failure to Reimburse Business Expenses;" and
(11) "Unfair Competition." A true and correct copy of the Complaint is attached as
**Exhibit A** to the concurrently-filed Declaration of Romtin Parvaresh. (Declaration of
Romtin Parvaresh ("Parvaresh Decl."), ¶ 3, Ex. A.)

   2.    On April 24, 2025, Defendant's registered agent for service of process
received, via process server, a packet containing the Summons and Complaint;
Stipulation to Use Alternative Dispute Resolution (ADR); Alternative Dispute Resolution
(ADR) Information; Notice of Case Assignment and Case Management Conference

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

(Civil); and Civil Case Cover Sheet. A true and correct copy of the service packet served on Defendant is attached as **Exhibit B** to the Declaration of Romtin Parvaresh. (Parvaresh Decl., ¶ 4, Ex. B.)

3.     On May 20, 2025, Defendant filed its Answer to Plaintiff's Complaint in San Diego Superior Court. A true and correct copy of the Answer is attached as **Exhibit C** to the Declaration of Romtin Parvaresh. (Parvaresh Decl., ¶ 5, Ex. C.)

4.     Defendant has not filed or received any other pleadings or papers, other than the pleadings described as **Exhibit A through Exhibit C**, in this action prior to filing this Notice of Removal. (Parvaresh Decl., ¶ 6.)

## II.     TIMELINESS OF REMOVAL

5.     Notice of removal is timely if it is filed within 30 days after the service of the complaint or summons—"The notice of removal . . . shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant . . . ." 28 U.S.C. § 1446(b)(1).

6.     The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

7.     Defendant's Notice of Removal is timely because it is filed on May 23, 2025, which is within 30 days of service of the Summons and Complaint on April 24, 2025.[1] 28 U.S.C. § 1446(b); Cal. Civ. Proc. Code § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be

---

[1]/     Because the true 30th day after April 24, 2025 falls on Saturday, May 24, 2025, the 30th day is extended to the next business day, Tuesday, May 27, 2025 by operation of law. Cal. Code Civ. Proc. § 12; Fed. R. Civ. P. 6(a)(1)(c); *see also* Cal. R. Ct. 1.10(b). Monday, May 26, 2025 is Memorial Day, a state and federal judicial holiday.

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

served. Service of a summons in this manner is deemed complete at the time of such delivery."); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) ("we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint . . . .").

## III.    REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

8.    Under CAFA, district courts have original jurisdiction for class actions "if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens* ("*Dart*"), 574 U.S. 81, 84 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)). As set forth below, each of these three requirements are met and thus this action is properly removable, pursuant to 28 U.S.C. section 1441(a).

### A.    This Action Includes Approximately 4,983 Proposed Class Members.

9.    A removal under CAFA requires at least 100 members in a proposed class. *See* 28 U.S.C. § 1332(d)(5)(B) (providing that CAFA jurisdiction does not apply to any class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100").

10.    Here, Plaintiff seeks to certify the following class of non-exempt employees who were employed by Defendant in California ("Class Members"):

> All current and former non-exempt employees who worked for Defendants in California at any time from four years (plus the additional 178-day statutory tolling period under Emergency Rule 9) prior to the filing of this action through the date of class certification.

(Compl., ¶ 21.) Based on the filing date of the Complaint on April 22, 2025, and applying Plaintiff's proposed 178-day tolling period, the relevant time period for purposes of calculation in this Notice of Removal is **October 26, 2020 to the present** (the "Amount-In-Controversy Period").

11.    During the Amount-In-Controversy Period, Defendant employed approximately **4,983 non-exempt employees in California**. (Declaration of Susan

3

Mimnaugh, filed concurrently herewith, ("Mimnaugh Decl."), ¶ 9.)[2] Thus, there is no question that the size of the proposed class far exceeds the minimum threshold of 100 members under CAFA.

**B.    Plaintiff And Defendant Are Minimally Diverse.**

12.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A).

13.    A party's citizenship is determined at the time the lawsuit was filed. *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("[T]he jurisdiction of the court depends upon the state of things at the time of the action [was] brought.").

14.    In the instant case, Plaintiff is a citizen of a state (California) that is different from the states of citizenship of Defendant (Delaware and Georgia).

**1.    Plaintiff Is A Citizen Of California.**

15.    For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the

---

[2]/    The calculations set forth in this notice are based on company records as of October 15, 2024. (Mimnaugh Decl., ¶ 8.) Because these records do not account for the hiring and separation of employees, and weeks worked, between October 15, 2024 and the filing of this action six months later, on April 22, 2025, the calculations set forth in this notice are **extremely conservative** and **understate** the amount in controversy. Accordingly, Defendant reserves the right to update its calculations to include this additional time period, as necessary.

4

individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

16.     In this case, Plaintiff alleges that she "worked for Defendants in California as a non-exempt employee from about October 2021 to January 2025." (Compl., ¶ 15.)

17.     Additionally, Plaintiff provided Defendant with her home address during the course of her employment for purposes of her personnel file, payroll checks, and tax withholdings. (Mimnaugh Decl., ¶ 5.) As reflected in Defendant's personnel records, Plaintiff provided Defendant with a California residence address at the time she was hired. (Mimnaugh Decl., ¶ 5.) At no time has Plaintiff provided Defendant with any non-California residence address. (Mimnaugh Decl., ¶ 5.)

18.     Plaintiff's domicile, and intent to remain domiciled in California, is further evident from the fact that she brought this lawsuit in San Diego Superior Court. Therefore, Plaintiff has been, at all relevant times, a citizen and resident of the State of California.

### 2.     Defendant Is A Citizen Of Delaware And Georgia, Not California

19.     Defendant is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1).

20.     For diversity purposes, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

21.     Defendant is now, and ever since this action commenced has been, a corporation incorporated under the laws of the State of Delaware. (Mimnaugh Decl., ¶ 6.) Thus, for purposes of diversity jurisdiction, Defendant is a citizen of Delaware.

22.     The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010). Under the

"nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high-level officers direct, control and coordinate its activities on a day-to-day basis. *Id*. at 92–93 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"); *see also Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092–93 (9th Cir. 1990) (holding that the "nerve center" is where "its executive and administrative functions are performed").

23.    Based on the "nerve center" test, Defendant is also a citizen of the State of Georgia, because it is where Defendant has had its principal place of business since this action commenced. Defendant's corporate headquarters are located in Atlanta, Georgia, where Defendant's high-level officers direct, control, and coordinate its activities. (Mimnaugh Decl., ¶ 7.) Defendant's high-level corporate officers maintain offices in Atlanta, and many of Defendant's corporate level functions are performed in the Atlanta headquarters. (Mimnaugh Decl., ¶ 7.) Additionally, many of Defendant's executive and administrative functions, including legal, finance, accounting, and human resources, are directed from the Atlanta headquarters. (Mimnaugh Decl., ¶ 7.) Defendant's overall executive and administrative functions do not occur in California. (Mimnaugh Decl., ¶ 7.)

24.    Therefore, for purposes of diversity of citizenship, Defendant is, and has been at all times since this action commenced, a citizen of the States of Delaware and Georgia. 28 U.S.C. § 1332(c)(1).

25.    Because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Georgia, minimal diversity exists for purposes of CAFA.

### 3.    The Citizenship Of Doe Defendants Should Be Disregarded.

26.    The other defendants named in the Complaint are merely fictitious parties identified as "Does 1 through 50" whose citizenship shall be disregarded for purposes of this removal. 28 U.S.C. § 1441(b) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is

disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"); *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).

27.     Thus, the existence of "Does 1 through 50" in the Complaint does not deprive this Court of jurisdiction. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679–80 (9th Cir. 2006) (rule applied in CAFA removal).

### C.     The Amount In Controversy For Three Of Plaintiff's 11 Claims Exceeds $18 Million, Which Is Well Above The $5 Million Statutory Threshold Under CAFA

28.     CAFA requires that the amount in controversy exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

7

29.    **Preponderance Of The Evidence Standard.** Plaintiff's Complaint does not allege a specific amount in controversy for the class she seeks to represent. When a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. In *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013), the Ninth Circuit held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.

30.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub. L. 112–63, Dec. 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d at 683 ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional minimum]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

8

31.     To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 88; *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added). *Accord Perez v. Rose Hills Co.*, 131 F.4th 804, 807 (9th Cir. 2025) ("While 'those assumptions cannot be pulled from thin air,' they can be 'founded on the allegations of the complaint' and do not necessarily need to be supported by evidence.") (citations omitted).

32.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

33.     It is well settled that "the court must accept as true plaintiff's allegations as pled in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

34.     As the Ninth Circuit explains, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez*, 372 F.3d at 1117; *see also Rodriguez*, 728 F.3d at 981 (holding that the ordinary preponderance of the

9

evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino*, 506 F.3d at 702 (holding that even if a plaintiff affirmatively pleads damages less than the jurisdictional minimum and does not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

35.    If a plaintiff asserts statutory violations, the Court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to all putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC,* 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make

10

assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), aff'd sub nom. 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

36.    Numerous other district courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (when complaint alleged "[the defendant] engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Soratorio*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*,

11

2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting time penalties since the complaint did not limit the number or frequency of violations).

37.     Plaintiff seeks to recover, on behalf of herself and the alleged class, unpaid wages and penalties for Defendant's alleged failure to pay minimum and overtime wages, failure to provide meal and rest periods, failure to pay sick leave and vacation pay, failure to timely pay wages during employment, failure to provide accurate and complete itemized wage statements, failure to timely pay final wages, failure to reimburse for business expenses, and unfair business practices. (*See* Compl.) Plaintiff also seeks attorneys' fees and costs. (Compl., ¶¶ 10, 58, 62, 67, 77, 82, 86, 91, 95, 98, 104; Prayer for Relief ¶ (h).)

38.     As set forth below, the alleged amount in controversy implicated by the classwide allegations exceeds **$18 million**. The calculation of the amount in controversy is limited to **only three of Plaintiff's 11 causes of action** – Plaintiff's third cause of action for meal period violations, fourth cause of action for rest period violations, and ninth cause of action for waiting time penalties – and associated attorneys' fees. **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission, the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.**

### 1.     Meal And Rest Period Claims

39.     Plaintiff's third and fourth causes of action seek class-wide recovery for alleged meal and rest period violations, respectively.

40.     California law provides that employees are generally entitled to a 30-minute meal period after five hours of work and a second meal period after ten hours of work. Cal. Lab. Code § 512. Likewise, employees are generally entitled to a 10-minute rest period for every four hours of work or major fraction thereof. *E.g.*, IWC Wage Order § 12(A).

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

317935233v.2

41.    Under California Labor Code section 226.7, employers must pay an extra hour's pay to employees who are not provided full or timely meal or rest periods. Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a meal and rest period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

42.    The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiff alleges claims for meal period and rest period premium pay as part of her unfair competition claim under California Business and Professions Code section 17200 *et seq*. (Compl., ¶ 100 [alleging that "Defendants have engaged and continue to engage in unfair and/or unlawful business practices in the State of California in violation of California Business and Professions Code § 17200 by committing the foregoing wage and hour violations alleged throughout this Complaint."].) Thus, for determining the amount in controversy, the four-year statute of limitations applies. Cal. Bus. & Prof. Code § 17208.

### a.    Meal Period Calculations

43.    Plaintiff's third cause of action for meal period violations is premised on the allegations that "Plaintiff and other class members often suffered non-compliant meal periods where they worked through part or all of their uncompensated meals" and they "routinely experienced missed, late, short, and interrupted meal periods due to pressures to keep up with high demands of the job and understaffing." (Compl., ¶¶ 27, 39.) Plaintiff further alleges that "[w]hen Defendants did not provide compliant meal periods, Defendants failed to pay Plaintiff and the class members all meal period premiums." (Compl., ¶ 40; *see also* Compl., ¶ 66 ["Defendants willfully failed in their affirmative obligation to consistently pay Plaintiff and class members one additional hour of pay at

13

1    the respective regular rate of compensation for each workday that a fully compliant meal

2    period was not provided"].)

3        44.    Based on Plaintiff's allegations, Defendant conservatively assumes (without

4    admitting) that Class Members were not provided one meal period each workweek.

5    Because Plaintiff has alleged a policy and practice of meal period violations, it is

6    reasonable to assume that there was at least one meal period violation each week for

7    every employee. Indeed, district courts have consistently upheld comparable and even

8    higher assumptions of meal period and rest period violations as plausible for determining

9    the amount in controversy, where the Complaint alleges a "systemic" or

10   "pattern/practice" of meal and rest period violations. *See, e.g., Wheatley*, 2019 WL

11   688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three

12   rest break violations per week reasonable where Plaintiff alleged a "a policy and

13   practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147,

14   1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members

15   were not provided … three of ten rest periods they were entitled to receive each work

16   week, even though assumption of a 100 percent violation rate may have been reasonable

17   based on allegations in the Complaint. The Court therefore we (sic) finds Defendant's

18   assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at

19   *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and

20   'consistently' failed to provide him and the putative class members with the required 30–

21   minute lunch break periods. Plaintiff does not limit the number of violations alleged in

22   his Complaint, nor has he offered any evidence that he or other putative class members

23   missed fewer than five legally required meal breaks per week. Thus, the Court finds that

24   'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that

25   Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia*

26   *v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding

27   an estimate of five missed rest periods a week reasonable where plaintiff alleged that

28   defendant maintained "policies, practices and procedures that caused the purported

14

violations. . .”); *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period and five rest period violations was reasonable); *Coleman*, 730 F. Supp. 2d at 1150 (“Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate,” i.e., 5 missed meal periods and five missed rest breaks per week). *Accord Arias*, 936 F.3d at 926 (holding that “Marriott's assumptions are plausible” where it assumed “one missed rest break” as the “lowest assumed violation rate”).

45.    As stated above, Defendant employed approximately 4,983 non-exempt employees in California during the Amount-In-Controversy Period. (Mimnaugh Decl., ¶ 9.) These employees worked approximately 186,836 workweeks during that time period and their average rate of pay is approximately $17.36 per hour. (Mimnaugh Decl., ¶ 9.)

46.    Although Defendant denies that Plaintiff or any Class Member was not provided any meal period or was otherwise not paid any required meal period premium pay, assuming just **one meal period violation per week** for each Class Member, the amount in controversy for Plaintiff's meal period claim would be **$3,243,472.96** [$17.36/hour x 1 hour x 186,836 workweeks].

### b.    Rest Period Calculations

47.    Plaintiff's fourth cause of action for rest period violations is premised on the allegations that “Defendants failed to provide all rest periods to which employees were entitled” and that “due to the job's high demands, lack of proper staffing, and the profession's nature, Plaintiff and the class members were rarely, if at all, authorized or permitted to take all their rest periods.” (Compl., ¶¶ 41-42.) Plaintiff further alleges that Defendant “failed to pay all rest period premiums to Plaintiff and other class members.” (Compl., ¶ 41; *see also* Compl., ¶ 71 [alleging that “Defendants willfully failed in their affirmative obligation to consistently pay Plaintiff and class members one additional hour of pay at the respective regular rate of compensation for each workday that a fully compliant rest period was not provided”].)

48.    Based on Plaintiff's allegations, Defendant conservatively assumes (without admitting) that Class Members were not provided one rest period each workweek. As explained above, because Plaintiff has alleged a policy and practice of rest period violations, it is reasonable to assume that there was at least one rest period violation each week for every employee.

49.    As stated above, Defendant employed approximately 4,983 non-exempt employees in California during the Amount-In-Controversy Period. (Mimnaugh Decl., ¶ 9.) These employees worked approximately 186,836 workweeks during that time period and their average rate of pay is approximately $17.36 per hour. (Mimnaugh Decl., ¶ 9.)

50.    Although Defendant denies that Plaintiff or any Class Member was not provided a rest period or was otherwise not paid any required rest period premium pay, assuming just **one rest period violation per week** for each Class Member, the amount in controversy for Plaintiff's rest period claim would be **$3,243,472.96** [$17.36/hour x 1 hour x 186,836 workweeks].

### 2.    Waiting Time Penalties

51.    Plaintiff's ninth cause of action seeks class-wide recovery for "waiting time penalties."

52.    Plaintiff's claim for waiting time penalties is premised on the allegation that Defendant does not pay all wages to employees upon separation of employment:

> Defendants willfully failed and continue to fail in their affirmative obligation to pay all wages earned and unpaid to Plaintiff and class members immediately upon termination of employment or within 72 hours thereafter for employees who did not provide at least 72 hours prior notice of his or her intention to quit, and further failed to pay those sums for 30 days thereafter in violation of Labor Code sections 201 through 203 and the IWC Wage Orders.

(Comp., ¶ 94.) On this ground, Plaintiff seeks waiting time penalties under California Labor Code section 203. (Comp., ¶¶ 92-93.)

53.    Under California Labor Code section 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a)

("If an employer willfully fails to pay… any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

54.    The statute of limitations period for California Labor Code section 203 penalties extends back only three years from the date of filing of the complaint, which is April 22, 2022 in this case. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

55.    It is also reasonable to assume that each former employee has waited over 30 days for payment of any allegedly unpaid wages. *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant employer's assumption that each employee was entitled to the maximum 30-day penalty); *Byrd v. Masonite Corp*., 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

56.    During the relevant three-year time period for waiting time penalties, from April 22, 2022 to the present, there were approximately 1,936 non-exempt employees of Defendant in California whose employment ended. (Mimnaugh Decl., ¶ 10.) The average rate of pay for these former employees is approximately $17.36 per hour. (Mimnaugh Decl., ¶ 10.)

57.    Although Defendant denies any liability, a reasonable estimate of the amount in controversy for waiting time penalties is **$8,066,150.40** [$17.36/hour x 8 hours/day x 30 days x 1,936 former non-exempt employees].

DEFENDANT CARTER'S RETAIL, INC.'S NOTICE OF REMOVAL

317935233v.2

### 3.     Aggregate Amount In Controversy Before Attorneys' Fees

58.     Although Defendant denies Plaintiff's allegations that she or Class Members are entitled to any relief for the above-mentioned claims, based on the foregoing calculations, the aggregate amount in controversy for the class based on just **three claims**, exclusive of attorneys' fees, is approximately **$14,553,096.32**, calculated as follows:

| **Claim** | **Amount In Controversy** |
|---|---|
| Meal Period | $3,243,472.96 |
| Rest Period | $3,243,472.96 |
| Waiting Time Penalties | $8,066,150.40 |
| **Sub-Total** | **$14,553,096.32** |

### 4.     Attorneys' Fees

59.     Plaintiff also seeks attorneys' fees. (Compl., ¶¶ 10, 58, 62, 67, 77, 82, 86, 91, 95, 98, 104; Prayer for Relief ¶ (h).) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

60.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010-11);

317935233v.2

*Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

61.     The Ninth Circuit has held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc*., 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

62.     Indeed, the Ninth Circuit again more recently confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

63.     In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g., Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Ramos v. MOOG Inc.*, 2020 WL 969023, at *4 (C.D. Cal. Feb. 27, 2020) (denying remand; "several courts in this Circuit, including this Court, have found that 25% attorneys' fees could be reasonable in CAFA wage and hour cases"); *Kastler v. Oh My Green, Inc.*, 2019 WL

5536198, at *7 (N.D. Cal. Oct. 25, 2019) (denying remand; "the Court can rely on its 'own knowledge of customary rates and [its] experience concerning reasonable and proper fees.' … In the Court's experience, Plaintiff brings a typical California wage and hour case in which courts in this Circuit would likely apply the 25% benchmark rate. … Even if a 25% fee were unreasonable, Defendant meets the jurisdictional threshold with a fee as low as 15%, which would certainly be more than reasonable in light of the statutory bases for fees in this type of case."); *Cortez v. United Nat. Foods, Inc.*, 2019 WL 955001, at *7 (N.D. Cal. Feb. 27, 2019) (denying remand and citing several other wage and hour cases using the 25% benchmark); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) (denying remand; "In this Court's experience, '[w]hen including attorneys' fees within the amount-in-controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate,' especially in wage and hour class actions like this one where fee awards at settlement typically require court approval. … As with the 'damages' calculations above, this is not to say that attorneys' fees here will ultimately amount to 25% of any class award; but the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *28-29 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context, the benchmark for setting attorneys' fees is 25 percent of the common fund).

64.     Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$3,638,274.08** in this case [$14,553,096.32 x 25%].

### 5.     Summary of Total Amount In Controversy

65.     Although Defendant denies Plaintiff's allegations that she or Class Members are entitled to any relief, based on Plaintiff's allegations and Prayer for Relief, and a conservative estimate based on those allegations, the total amount in controversy is at least **$18,191,370.40**, including attorneys' fees, calculated as follows:

| **Claim** | **Amount In Controversy** |
|---|---|
| Meal Period | $3,243,472.96 |
| Rest Period | $3,243,472.96 |
| Waiting Time Penalties | $8,066,150.40 |
| **Sub-Total** | **$14,553,096.32** |
| Attorneys' Fees (25%) (based on the above calculated claims only) | $3,638,274.08 |
| **Total (on the above claims only)** | **$18,191,370.40** |

This total amount in controversy well exceeds the $5 million threshold set forth under 28 U.S.C. section 1332(d)(2) for removal jurisdiction.

66.     Accordingly, because there are over 100 proposed class members, diversity of citizenship exists, and the amount in controversy exceeds $5 million, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore subject to removal to this Court pursuant to 28 U.S.C. section 1441(a).

67.     To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C.

section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.    VENUE

68.    Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. sections 84(d), 1441(a), and 1446(a). This action originally was brought in San Diego Superior Court, which is located within the Southern District of California. 28 U.S.C. § 84(d). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V.    NOTICE TO STATE COURT AND TO PLAINTIFF

69.    Pursuant to 28 U.S.C. section 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and all counsel of record, together with a copy of the Notice of Removal, and will be filed with the Clerk of San Diego Superior Court.

70.    This Notice of Removal will be served on counsel of record for all parties. A Certificate of Service regarding the Notice of Removal and supporting documents will be filed concurrently.

## VI.    PRAYER FOR REMOVAL

71.    WHEREFORE, Defendant prays that this civil action be removed from San Diego Superior Court to the United States District Court for the Southern District of California.

DATED: May 23, 2025                    Respectfully submitted,

                                       SEYFARTH SHAW LLP


                                       By: */s/ Romtin Parvaresh*
                                           Jon D. Meer
                                           Leo Q. Li
                                           Romtin Parvaresh
                                           Attorneys for Defendant
                                           CARTER'S RETAIL, INC.

22